UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

HERBERT S. MONCIER,                    )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )      No.:   3:11-CV-301
                                       )             (VARLAN/SHIRLEY)
NANCY JONES, *et al.*,                 )
                                       )
            Defendants.                )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on plaintiff's request for injunctive relief [Docs. 2, 10].[1]  Defendants filed a response in opposition [Doc. 8], and plaintiff replied [Docs. 9, 10].  The Court then heard oral argument, at length, from all parties [Doc. 15].  The day after the hearing, defendants filed a notice of supplemental authority [Doc. 16].

The Court has thoroughly considered the filings as well as the arguments advanced orally by the parties.  For the reasons stated herein, the Court denies plaintiff's request for injunctive relief.

## I.      Background

This case comes to the Court with a long, complex, and in some ways unfortunate, history.  On July 30, 2008, defendant Nancy Jones, Disciplinary Counsel for the Board of

---

[1]The Court notes that plaintiff currently is suspended from practicing before this Court. *In re Moncier*, 550 F. Supp. 2d 768 (E.D. Tenn. 2008).  Plaintiff received authorization from the Honorable Curtis L. Collier, Chief United States District Court Judge, to commence this action. *Id.,* No. 1:08-MC-9 (E.D. Tenn. June 17, 2011).

Professional Responsibility of the Supreme Court of Tennessee (the "Board"), filed a petition for discipline against plaintiff [Doc. 8-1]. A hearing panel for the Board held a hearing and, on January 13, 2010, the hearing panel issued its judgment, finding plaintiff had violated certain rules of the Tennessee Rules of Professional Conduct, and imposed a forty-five day active suspension, along with a ten-and-one-half month probationary period [Doc. 6 ¶ 10]. The hearing panel also required a practice monitor for plaintiff's probationary period and that plaintiff obtain an additional twelve hours of ethics continuing legal education during that time [*Id.*]. Plaintiff filed post-judgment motions on January 19, 2010, pursuant to "Tenn. Sup. Ct. R. 9, 23.2 and Tenn. R. Civ. P. 52.02, 54.02, 59.04 and 60.02 for relief from multiple errors and mistakes in the [h]earing [p]anel's judgment" [*Id.* at ¶ 11]. On February 13, 2011, the hearing panel held that it did not have the authority to consider plaintiff's motions [*Id.* at ¶ 12]. The Board considered the hearing panel's judgment on March 12, 2010 [Doc. 8-1].[2]

Pursuant to Tennessee Supreme Court Rule 9 §§ 1.3 and 8.3 and Tenn. Code Ann. § 29-9-101 *et seq.*, as well as "the routine and customary practice under those rules and statutes," plaintiff alleges that he timely filed a petition for judicial review with the Knox County Circuit Court [*Id.* at ¶ 13]. On September 10, 2010, the Circuit Court held that portions of the hearing panel's order were not charged in plaintiff's disciplinary complaint,

---

[2]It appears that the Board endorsed the hearing panel's judgment as it later requested that the Tennessee Supreme Court enforce such judgment. *See supra*, p. 4.

2

dismissed those charges, and ordered a reconsideration of the appropriate discipline [*Id.* at ¶ 14; Doc. 8-1].

On December 20, 2010, a date on which plaintiff states his new hearing before the hearing panel was pending, the Tennessee Supreme Court decided *Board of Professional Responsibility of the Tennessee Supreme Court v. Cawood*, 330 S.W.3d 608 (Tenn. 2010), which plaintiff contends "changed the routine and customary practice for obtaining judicial review in Tennessee disciplinary proceedings" [Doc. 6 ¶ 15]. Plaintiff further contends that the Tennessee Supreme Court incorporated into Rule 9 §§ 1.3 and 8.3 and Tenn. Code Ann. § 27-9-101 *et seq.* requirements from a different statute, Tenn. Code Ann. § 27-8-101 *et seq.*, which "requires writs for constitutional certiorari to be under oath and contain the language that the petition was the 'first application for the writ'" [*Id.* at ¶ 16].

Thereafter, the Board filed a motion, pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure, asking the Circuit Court to set aside its order affirming in part and reversing in part the judgment of the hearing panel on the ground that plaintiff's petition failed to satisfy the requirements set forth in *Cawood* [*Id.* at ¶ 19; Doc. 8-1]. Plaintiff also filed a Rule 60.02 motion on February 11, 2011, requesting that the Circuit Court grant plaintiff relief by setting aside its earlier judgment and allow plaintiff to amend and supplement his petition to conform to the requirements of *Cawood* [Doc. 6 ¶ 20].[3] On

---

[3]The Court notes that plaintiff alleges that he filed his motion on February 11, 2011, but the order of enforcement of the Tennessee Supreme Court outlining the events at issue indicates that the motion was filed on February 18, 2011 [Doc. 8-1].

3

February 18, 2011, the Circuit Court granted the Board's motion and vacated its judgment, and denied plaintiff's motion [*Id.* at ¶¶ 21, 22]. Consequently, on March 9, 2011, the Board filed a "Protocol Memorandum" in the Tennessee Supreme Court seeking to enforce its original judgment and punishment [*Id.* at ¶ 30]. On March 10, 2011, plaintiff filed an appeal of the denial of his Rule 60.02 motion, and, on March 14, 2011, he sought a stay of the enforcement of discipline until the conclusion of his appeal [*Id.* at ¶ 23; Doc. 8-1]. The Tennessee Supreme Court denied the request for a stay, but granted plaintiff's alternative request for an opportunity to respond to the Board's proposed order of enforcement [Doc. 8-1]. Plaintiff subsequently filed a "lengthy response to the proposed order of enforcement, formally raising fifteen issues," as well as other motions [*Id.*]. One such motion requested that the court consolidate plaintiff's appeal of the February 18, 2011 order of the Circuit Court with the Board's request for enforcement [*Id.*].

Plaintiff informs the Court that he also filed a Rule 60.02 motion with the hearing panel on February 12, 2011, seeking relief from its judgment and permission to re-file his petition for judicial review under the requirements of *Cawood*, alleging that the Tennessee Rules of Civil Procedure apply to the hearing panel disciplinary proceedings pursuant to Rule 25.1 of the Tennessee Supreme Court [Doc. 6 ¶¶ 24, 25]. On March 4, 2011, the hearing panel held it did not have jurisdiction to grant plaintiff Rule 60.02 relief [*Id.* at ¶ 26]. Plaintiff contends that he filed an application for judicial review of that decision, but the Circuit Court denied judicial review [*Id.* at ¶¶ 17, 28]. Plaintiff appealed that denial on April 29, 2011 [*Id.* at ¶ 29].

On February 11, 2011 plaintiff filed a request for habeas corpus relief in Knox County Criminal Court [Doc. 8], requesting relief in the event the Circuit Court granted the Board's Rule 60.02 motion and the hearing panel denied plaintiff's Rule 60.02 motion [*Id.*]. The habeas proceeding was dismissed on May 10, 2011 [*Id.*]. On June 9, 2011, plaintiff filed a notice of appeal of that order [*Id.*].

On June 1, 2011, after reviewing "the Board's proposed order of enforcement, [plaintiff's] response, the Board's reply, [plaintiff's] motions, and the Board's responses to those motions," the Tennessee Supreme Court issued an order of enforcement, concluding "that the punishment imposed by the [h]earing [p]anel is neither inadequate nor excessive, but rather . . . appropriate under the circumstances of this case and consistent with the goal of attaining uniformity of punishment throughout the State" [Doc. 8-1; Doc. 6 ¶¶ 31, 32]. The Tennessee Supreme Court also entered judgment against plaintiff for approximately $22,000 in attorney fees "for payment of Disciplinary Counsel's prosecution of [p]laintiff that had been reversed by the Circuit Court . . . [and] judicially defaulted by *Cawood*" [Doc. 8-1; Doc. 6 at ¶ 34]. It declined, plaintiff asserts, to address plaintiff's claim that the hearing panel and the subsequent disciplinary proceedings were conducted in violation of plaintiff's federal constitutional rights [Doc. 6 ¶ 33].

Plaintiff claims that the State of Tennessee and the Board currently are enforcing plaintiff's punishment "under color of Tennessee's unconstitutional disciplinary proceedings" [*Id.* at ¶ 35]. He asserts that the proceedings were *quasi*-criminal in nature under *In re Ruffalo*, 390 U.S. 544 (1968), and are to be conducted in conformity with

5

constitutional due process [*Id.* at ¶ 36]. He further claims he has exhausted his state-court remedies [*Id.* at ¶ 37].

Plaintiff alleges ten "counts" in his amended complaint. Count I alleges that the practice monitor probation provision violates the Fourth, Fifth, and Fourteenth Amendments.[4] Plaintiff asserts that the Disciplinary Counsel did not request a practice monitor from the hearing panel, but such condition was included in the hearing panel's judgment on its own initiative [*Id.* at ¶¶ 41, 42]. Plaintiff claims he has never had an opportunity to be heard on the appointment or duties of a practice monitor [*Id.* at ¶ 43].

According to plaintiff, the Disciplinary Counsel's duties are established by Tennessee Supreme Court Rule § 7.2 and do not include appointing or establishing the duties of a practice monitor and do not provide that the Disciplinary Counsel may dictate the terms and conditions of plaintiff's probation [*Id.* at ¶ 44]. Nevertheless, plaintiff asserts, defendant Jones assumed the role of plaintiff's probation officer without authority and is imposing conditions upon plaintiff's probation that have not been ordered by the hearing panel or the Board, thus violating plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments [*Id.* at ¶ 45].

Plaintiff claims that he has attempted to obtain information about the practice monitor provision from defendant Jones, including who the person would be, what the person's duties would be, what access the person would have to plaintiff's office, plaintiff's clients, attorney-

---

[4]Plaintiff refers to the monitor as both a "probation monitor" and a "practice monitor" throughout his filings. The term "practice monitor" is used for consistency.

client or attorney work product materials, information necessary to determine what plaintiff does in court or with a client, and what access the person would have when plaintiff is traveling or working outside of his office [*Id*. at ¶¶ 49, 50].[5]  Plaintiff also claims that only after the filing of the original complaint in this action did defendant Jones inform him that he would be required to pay for a practice monitor for all of his court appearances and that plaintiff would not have to share any information with the practice monitor [*Id*. at ¶ 51].  Plaintiff contends that defendant Jones continues to decline to address the duties of the practice monitor, both in and out of court [*Id*.].  Plaintiff asserts that the requirement of paying a practice monitor to report any ethical violations plaintiff may commit duplicates the duty of the attorney-judge, co-counsel, and opposing counsel to do the same thing pursuant to Rule 8 § 8.3 of the Tennessee Supreme Court Rules and takes plaintiff's property without due process of law and the right to be heard [*Id*. at ¶ 52].

In sum, plaintiff alleges that the practice monitor provision invokes significant constitutional considerations, including invasion of constitutionally protected attorney-client and work product materials, the duplication of the duty to report misconduct, the taking of property (the fees for the monitor) without due process of law, and compelled access of Disciplinary Counsel to plaintiff's office [*Id*. at ¶ 53].  He seeks an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 against defendant Jones to preclude defendant Jones from appointing or dictating the duties of a practice monitor and against Tennessee to provide

---

[5]Some of the details regarding the practice monitor were revealed during the hearing before this Court on plaintiff's request for injunctive relief.

plaintiff notice and a meaningful opportunity to be heard by a hearing panel on the appointment and duties of a practice monitor [*Id*. at ¶¶ 57, 58].

Count II alleges that plaintiff was denied fair notice of the requirements for judicial review of the hearing panel disciplinary judgment in violation of the Fifth and Fourteenth Amendments. Plaintiff claims that the Supreme Court's construction of Tennessee Supreme Court Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 *et seq.* in *Cawood* is unconstitutionally vague as applied to plaintiff and deprived plaintiff of liberty and property without notice and a meaningful opportunity to be heard [*Id*. at ¶ 59].

Plaintiff alleges that he followed the "common and routine" practice in place for many years for obtaining judicial review of the hearing panel's judgment [*Id*. at ¶ 60]. Plaintiff further alleges that Disciplinary Counsel did not raise any objection that would have afforded plaintiff an opportunity to cure the deficiencies in his complaint, but joined issue with the merits for plaintiff's claims for judicial review [*Id*. at ¶¶ 61, 62]. And plaintiff submits, the Circuit Court adjudicated plaintiff's petition on the merits on the record *de novo* [*Id*. at ¶¶ 63, 65]. Thus, plaintiff claims that his petition was "as of right" and that any statement that it was the "first application for a writ" was meaningless [*Id*. at ¶¶ 64, 66].

Plaintiff further claims that *Cawood* created a new and unforeseeable interpretation of Rule 9 § 1.3 [*Id*. at ¶ 67]. Prior to *Cawood*, the writ requirements of Tenn. Code Ann. §§ 27-8-104 and 27-8-106 did not apply, and were never applied, to attorney discipline appeals [*Id*. at ¶ 68]. Plaintiff alleges that the plain language of Rule 9 § 1.3 fails to provide notice that the requirements established by *Cawood* would be required for judicial review of hearing

8

panel judgments [*Id*. at ¶ 69]. Further, Tennessee statutory construction principles failed to provide notice that the requirements of *Cawood* would be imposed [*Id*. at ¶ 70]. Plaintiff also submits that Disciplinary Counsel was not placed on notice and did not foresee the requirements imposed by *Cawood*, and thirty disciplinary appeal cases from 1982 through 2010 did not comport with *Cawood's* requirements [*Id*. at ¶¶ 72, 74]. Plaintiff claims that he was not seeking a writ, but judicial review of the judgment of the hearing panel, and that other forms of review of state administrative proceedings do not require the requirements established in *Cawood* [*Id*. at ¶¶ 75, 76].

Accordingly, plaintiff moves the Court to hold that *Cawood's* construction of Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 *et seq*. denied plaintiff fair notice of the requirements for judicial review in violation of the Fifth and Fourteenth Amendments [*Id*. at ¶ 77]. He also requests an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 precluding the application of *Cawood* to void plaintiff's favorable judgment reversing the hearing panel judgment and the denial of plaintiff's access to Tennessee's courts [*Id*. at ¶ 78].

Count III alleges that plaintiff was denied fair notice or that the rule in *Cawood* was applied *ex post facto* in violation of the Fifth and Fourteenth Amendments. Plaintiff claims that the *Cawood* decision constituted a change in the common and long-standing procedures for obtaining judicial review of a hearing panel's decision [*Id*. at ¶ 79]. Plaintiff also alleges that it was decided after his successful judicial review and at a time while plaintiff's case remained in the "judicial pipeline" [*Id*. at ¶ 80]. Thus, he claims, retroactive application of *Cawood* deprived him of a prior favorable judgment in violation of the *ex post facto* clause

9

set forth in Article I, Section 9, Clause 3 of the Constitution and the right to fair notice found in the Fifth, Sixth, and Fourteenth Amendments [*Id*. at ¶¶ 81, 82]. Plaintiff moves for the Court to hold that *Cawood* cannot be retroactively applied to void plaintiff's favorable judgment or prevent plaintiff from having access to Tennessee's courts [*Id*. at ¶ 83]. He seeks an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 precluding Tennessee from applying *Cawood* to void plaintiff's favorable judgment and denying him access to the courts [*Id*. at ¶ 84].

Count IV alleges that plaintiff was denied his right to petition for redress of grievances in violation of the First and Fourteenth Amendments. Plaintiff claims that application of *Cawood* to void his favorable judgment denied him his First Amendment right to petition for redress of grievances, which is made applicable to Tennessee by the Fourteenth Amendment [*Id*. at ¶¶ 85, 86]. He moves the Court to hold that *Cawood* cannot be applied to void his favorable judgment or to deny him access to Tennessee's courts [*Id*. at ¶ 87]. He seeks an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 precluding Tennessee from applying *Cawood* to void plaintiff's favorable judgment and denying him access to the courts [*Id*. at ¶ 88].

Count V alleges that plaintiff was denied his right to due process notice and a meaningful opportunity to be heard in violation of the Fifth and Fourteenth Amendments. Plaintiff claims that four of the hearing panel's findings were not charged in the petitions and did not comply with plaintiff's Fifth and Fourteenth Amendment rights to due process and notice and a meaningful opportunity to be heard [*Id*. at ¶ 89]. He submits that the Circuit

Court opinion found that plaintiff was not provided notice of the most serious misconduct found by the hearing panel—that plaintiff did not obtain a written waiver or acknowledgment of potential conflicts of interest from his client in *United States v. Vassar*—in the Board's petition for discipline [*Id*. at ¶ 90]. Plaintiff contends that, in fact, he did obtain such a waiver and such was filed with the hearing panel [*Id*. at ¶ 91].

Plaintiff alleges that the hearing panel made its decision on the basis of eight numbered acts of misconduct listed for the first time in the proposed findings and conclusions of law filed after the December 20, 2009 hearing [*Id*. at ¶ 94]. And its judgment divided those eight acts of misconduct into ten allegations of misconduct [*Id*. at ¶ 95]. Plaintiff claims that eight of those ten allegations of misconduct did not provide plaintiff Fifth and Fourteenth Amendment due process notice or a meaningful opportunity to be heard [*Id*. at ¶ 96]. Further, although the hearing panel found in plaintiff's favor on five of the Disciplinary Counsel's charges, it based its decision on four of those allegations of misconduct [*Id*. at ¶¶ 97, 98].

On review, the Circuit Court determined that two of the findings of misconduct were not charged in the petition against plaintiff, reversed the hearing panel's punishment, and remanded the case back to the hearing panel [*Id*. at ¶ 99]. Plaintiff contends that he was denied due process notice and a meaningful opportunity to be heard on four of the five acts of misconduct in violation of the Fifth and Fourteenth Amendments as a result of *Cawood* [*Id*. at ¶¶ 102, 103]. He accordingly moves the Court to hold that *Cawood* cannot be retroactively applied to void plaintiff's favorable judgment and keep plaintiff from having

11

access to Tennessee's courts [*Id*. at ¶ 104]. He seeks an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 precluding Tennessee from applying *Cawood* to void plaintiff's favorable judgment and denying him access to the courts [*Id*. at ¶ 105].

Count VI alleges that plaintiff was denied his right to due process and a fair hearing and is being punished for conduct for which he is actually innocent of committing based on a mistake of the hearing panel in violation of the Fifth, Sixth, and Fourteenth Amendments. Plaintiff claims that the hearing panel found that plaintiff violated Rule 1.7 of the Rules of Professional Conduct by not obtaining a written waiver and acknowledgment regarding conflicts from Michael Vassar, but that such was a mistake because the hearing panel overlooked the exhibit containing the waiver that was introduced at the hearing [*Id*. at ¶¶ 106, 107]. Plaintiff asserts that the Circuit Court reversed the hearing panel's finding because it was not charged in the petition for discipline [*Id*. at ¶ 108].

Plaintiff thus claims he is being punished for conduct of which he is innocent in violation of due process of law and the opportunity to be heard as a result of *Cawood* in violation of the Fifth, Sixth, and Fourteenth Amendments [*Id*. at ¶¶ 109, 110]. He moves the Court to hold that *Cawood* cannot be retroactively applied to void plaintiff's favorable judgment and keep plaintiff from having access to Tennessee's courts [*Id*. at ¶ 111]. He seeks an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 precluding Tennessee from applying *Cawood* to void plaintiff's favorable judgment and denying him access to the courts [*Id*. at ¶ 112].

Count VII alleges that plaintiff was denied his right to confrontation in violation of the Sixth and Fourteenth Amendments. Plaintiff claims the hearing panel considered facts and opinions from statements made out of court by Judge Greer, Judge Workman, Judge Collier, and the Sixth Circuit, all of whom did not testify and were not available for cross-examination [*Id*. at ¶ 113]. Plaintiff contends their statements were testimonial in nature and were hearsay and consideration of such violated his Sixth and Fourteenth Amendment right to confrontation [*Id*. at ¶ 114]. Plaintiff also alleges that, over plaintiff's objection, the hearing panel "permitted an agent of the FBI to testify for the [Board] after the [g]overnment denied [p]laintiff's CFR request, which deprived [p]laintiff of a meaningful opportunity to establish bias" on cross-examination [*Id*. at ¶ 115].

Plaintiff thus claims that his liberty to practice law has been unconstitutionally taken from him by a decision of the hearing panel that considered facts and opinions from out-of-court declarants for which plaintiff was denied the right of confrontation and cross-examination [*Id*. at ¶ 116]. He requests the Court to hold that *Cawood* cannot be applied to prevent plaintiff from having access to Tennessee's courts [*Id*. at ¶ 117]. He seeks an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 precluding Tennessee from applying *Cawood* to deny plaintiff access to the courts [*Id*. at ¶ 118].

Count VIII alleges that plaintiff was denied his right to equal protection of the law in violation of the Fifth and Fourteenth Amendments. Plaintiff alleges that Tennessee law provides that the Tennessee Rules of Civil Procedure applied to plaintiff's disciplinary proceedings and thus provided him a right to move to correct the judgment pursuant to Rules

13

52.02, 54.02, 59.04, and 60 [*Id*. at ¶¶ 119, 120]. Plaintiff further alleges that he filed timely motions pursuant to those rules and the hearing panel held that it did not have jurisdiction to grant his post-judgment motions [*Id*. at ¶¶ 121, 122].

On judicial review, the Circuit Court held that the hearing panel's failure to consider plaintiff's post-judgment motions was harmless error because the Circuit Court would review those errors [*Id*. at ¶ 123]. In reviewing such, the Circuit Court reversed the hearing panel on two of plaintiff's post-judgment claims [*Id*. at ¶ 124]. After the Circuit Court judgment was judicially defaulted, however, plaintiff claims it was no longer able to review the errors [*Id*. at ¶ 125].

Plaintiff filed a Rule 60.02 motion for the hearing panel to correct its denial of plaintiff's post-judgment motions, but the hearing panel again held that it did not have jurisdiction to do so [*Id*. at ¶¶ 126, 127]. Plaintiff alleges that the Circuit Court granted the Board's Rule 60.02 motion and voided its judgment, a decision plaintiff appealed to the Tennessee Supreme Court [*Id*. at ¶ 128]. Plaintiff claims that the Tennessee courts afforded the Board the right to correct a judgment pursuant to Rule 60.02 but denied plaintiff his constitutional right to equal protection of the laws by denying him consideration of timely and proper motions to correct errors made by the hearing panel and the opportunity to comply with *Cawood's* new rule [*Id*. at ¶¶ 129, 130]. Plaintiff thus moves the Court to hold that *Cawood* cannot be applied to deny plaintiff due process or equal protection of Tennessee's rules and statutes [*Id*. at ¶ 131]. He seeks an injunction pursuant to 42 U.S.C.

§§ 1983 and 1988 precluding application of *Cawood* to deny plaintiff due process or the equal protection of Tennessee's rules and statutes [*Id.* at ¶ 132].

Count IX alleges that plaintiff was denied the rights provided by Tennessee pursuant to the Rules of Civil Procedure in violation of the Fifth and Fourteenth Amendments. Plaintiff alleges that Tennessee law provided him a right to a one-level appeal from the Circuit Court judgment denying his Rule 60.02 motion and from the Circuit Court affirming the hearing panel's decision to deny plaintiff Rule 60.02 relief [*Id.* at ¶¶ 133, 134]. Plaintiff claims he was denied such right in violation of the Fifth and Fourteenth Amendment rights to due process of law and equal protection of Tennessee's law [*Id.* at ¶ 137]. He moves the Court to hold that *Cawood* cannot be applied to deny plaintiff due process or equal protection of Tennessee's rules and statutes [*Id.* at ¶ 138]. He seeks an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 precluding application of *Cawood* to deny plaintiff due process or the equal protection of Tennessee's rules and statutes [*Id.* at ¶ 139].

Count X alleges that plaintiff was denied the right to present a complete defense. Plaintiff alleges that he had a constitutional right to present a complete defense in the *quasi*-criminal disciplinary proceeding [*Id.* at ¶ 140]. He submits that he presented several defenses that were not considered by the hearing panel [*Id.* at ¶ 141]. He also submits that the judicial default created by *Cawood* denied him the opportunity to present a complete defense with respect to the hearing panel's decision [*Id.* at ¶ 142]. Plaintiff accordingly moves the Court to hold that *Cawood* cannot be applied to deny plaintiff his right to present a complete defense for relief from the hearing panel's judgment and requests an injunction pursuant to

15

42 U.S.C. §§ 1983 and 1988 precluding application of *Cawood* to deny plaintiff the right to present a complete defense [*Id*. at ¶¶ 144, 145].

Count XI alleges that a judgment for $22,000 in attorney fees for the Disciplinary Counsel was entered against him as a result of *Cawood* and plaintiff being denied access to Tennessee courts [*Id*. at ¶ 146]. He further alleges that, but for *Cawood*, he may have been entitled to an award of attorney fees [*Id*. at ¶ 147]. Plaintiff therefore moves the Court to hold that *Cawood* cannot be relied upon by Tennessee to collect a judgment against him for attorneys fees for the Disciplinary Counsel [*Id*. at ¶ 148]. He seeks an injunction pursuant to 42 U.S.C. §§ 1983 and 1988 precluding application of *Cawood* to take plaintiff's property without providing plaintiff access to the Tennessee courts [*Id*. at ¶ 149].

In light of these claims, and for his ultimate relief, plaintiff requests that the Court take the following action:

1. hold that Tennessee's construction in *Cawood* of Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 *et seq*. for the requirements for judicial review of the hearing panel's judgment is unconstitutional;

2. issue an injunction that Tennessee cannot apply the unconstitutional construction in *Cawood* of Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 *et seq*. to deny plaintiff the benefit of the favorable judgment plaintiff obtained overruling the hearing panel's judgment;

3. issue an injunction that Tennessee cannot apply the unconstitutional construction in *Cawood* of Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 *et seq*. to deny plaintiff the benefit of Tennessee's rules and statutes to obtain relief from the hearing panel's judgment; and

4. issue an injunction against Nancy S. Jones to preclude her from appointing or dictating the duties of a practice monitor.

[Doc. 6].

16

In the alternative, plaintiff requests a writ of habeas corpus freeing plaintiff from the restraints on his liberty to practice law pursuant to Tennessee's unconstitutional construction in *Cawood* of Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 *et seq*. that judicially defaulted plaintiff's favorable judgment reversing the hearing panel's judgment and denying plaintiff relief under Tennessee's rules and statutes [*Id*.].

At the same time plaintiff commenced this action, plaintiff filed an Application for Temporary Restraining Order on Notice pursuant to Rule 65 of the Federal Rules of Civil Procedure [Doc. 2]. Pursuant to his request for injunctive relief, plaintiff seeks:

1.  to return to the active practice of law prior to the expiration of the current 45-day suspension, which expires July 28, 2011; and

2.  to prohibit Disciplinary Counsel Jones from appointing or dictating the duties of a practice monitor prior to the Board providing plaintiff notice and a meaningful opportunity to be heard on the appointment and duties of the practice monitor

[*Id*.]. Plaintiff subsequently amended this request to request a "temporary injunction" in addition to temporary restraining order [Doc. 10].

## II.  Analysis

Rule 65 of the Federal Rules of Civil Procedure permits a party to seek injunctive relief if he believes he will suffer irreparable harm or injury during the pendency of the action. Fed. R. Civ. P. 65. A temporary restraining order "is meant to preserve the status quo until a court can make a reasoned resolution of a dispute." *Black v. Cincinnati Fin. Corp.*, No. 1:11-CV-210, 2011 WL 1640962, at *1 (S.D. Ohio May 2, 2011) (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996)). A temporary

restraining order may be issued without notice to the adverse party and is of short duration (generally no more than fourteen days), tending to terminate with a ruling on a preliminary injunction. *Id.* (citing *Workman v. Bredesen*, 486 F.3d 896, 922 (6th Cir. 2007)); Fed. R. Civ. P. 65(b). If a defendant is on notice, however, a request for a temporary restraining order may be treated as a motion for a preliminary injunction. *Id.*; Fed. R. Civ. P. 65(a)(1). Although he initially requested a temporary restraining order on notice, plaintiff later recognized the distinction between a temporary restraining order and a preliminary injunction and, pursuant to his amended request for injunctive relief [Doc. 10], requested a "temporary injunction" in addition to a temporary restraining order because defendants were put on notice.

Whether treated as a motion for a temporary restraining order or a temporary/preliminary injunction, however, in determining whether to grant plaintiff's request for injunctive relief the Court must consider four factors: (1) whether the movant would suffer irreparable harm without the injunction; (2) whether issuance of the injunction would cause substantial harm to others; (3) whether the public interest would be served by the issuance of the injunction; and (4) whether the movant has demonstrated a strong likelihood of success on the merits. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted); *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (citing *PACAAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003)). The factors are to be balanced and are "not prerequisites that must be met." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th

18

Cir. 2007) (citation omitted). A stronger showing of likelihood of success on the merits is required if the other factors militate against granting relief, but a lesser showing of likelihood of success on the merits is required when the other factors support granting relief. *Performance Unlimited, Inc. v. Questar Publ'rs, Inc*., 52 F.3d 1373, 1385–86 (6th Cir. 1995) (citations omitted). Further, "a district court is not required to make specific findings concerning each of the four factors . . . if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003).

## A.   A.   Likelihood of Success on the Merits

Defendants assert various reasons why plaintiff has not, and apparently cannot, show a strong likelihood of success on the merits. For the reasons that follow, the Court agrees.

### 1.   Eleventh Amendment Immunity

Defendants contend that plaintiff is not likely to succeed on the merits because two defendants—the State of Tennessee and the Board—should be dismissed from this action as a result of having immunity under the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has made clear that sovereign immunity extends to actions brought against a state by its own citizens, as well as against "'state instrumentalities' [or] . . . those government entities that act as 'arm[s]' of the State." *S.J. Hamilton Cnty.*, 374 F.3d 416, 419 (6th Cir. 2004) (citations omitted); *see also Hans v. Louisiana*, 134 U.S. 1, 15

19

(1890). The immunity is far reaching—it extends to "all suits, whether for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citation omitted).

Although it is without question that sovereign immunity applies with respect to defendant the State of Tennessee, whether the Board is entitled to immunity requires more consideration. In Tennessee, "[i]t is well settled that the licensing and regulation of attorneys practicing law in courts of Tennessee is squarely within the inherent authority of the judicial branch of government." *Smith v. Cnty. Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984) (citation omitted). Furthermore, the "Supreme Court has original and exclusive jurisdiction to promulgate its own [r]ules," and "[i]ts rule making authority embraces the admission and supervision of members of the Bar of the State of Tennessee." *Id.* (citation omitted). Pursuant to that power, the Tennessee Supreme Court created the Board, which it has described as its agency. *Danner v. Bd. of Prof'l Responsibility of the Tenn. Supreme Court*, 277 F. App'x 575, 578 (6th Cir. 2008) (citations omitted); *Doe v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 104 S.W.3d 465, 470, 472, 474 (Tenn. 2003) (citation omitted); *Brown v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 29 S.W.3d 445, 449 (Tenn. 2000) (citation omitted). Accordingly, the Court finds that defendants the State of Tennessee and the Board most likely are entitled to Eleventh Amendment immunity. *Accord Warren v. Burdi*, No. 10-11775, 2011 WL 572424, at *15–17 (E.D. Mich. Jan. 26, 2011) (finding that the Michigan Attorney Grievance Commission is an arm of the Michigan Supreme Court, which is immune pursuant to the

20

Eleventh Amendment, and thus "entitled to Eleventh Amendment immunity in discharging its 'constitutional responsibility' to supervise and discipline attorneys"); *Quatkemeyer v. Ky. Bd. of Med. Licensure*, No. 3:09-CV-746, 2010 WL 774195, at *4 (W.D. Ky. Feb. 26, 2010) (noting that "the Sixth Circuit has repeatedly held that boards created by a state to review professional conduct and licensing are entitled to Eleventh Amendment immunity" and citing examples); *Butcher v. Mich. Supreme Court*, No. 07-14940, 2008 WL 2067028, at *2 (E.D. Mich. May 15, 2008) (finding that the plaintiff's claim against the Michigan Supreme Court, the Michigan Attorney Grievance Commission, and the Michigan Attorney Discipline Board for injunctive relief from an order suspending his license to practice law issued by a hearing panel for the Michigan Attorney Discipline Board barred by the Eleventh Amendment).

"There are[, however,] three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citation omitted). None of the exceptions applies to defendants the State of Tennessee or the Board. First, neither defendant has consented to suit; indeed, defendants raised the Eleventh Amendment in opposition to plaintiff's motion for injunctive relief. Second, the *Ex Parte Young* exception, which provides that "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law," *id.* (citation omitted), does not apply because neither the State of Tennessee nor the Board is a

state official.[6]  Third, Congress has not abrogated the State of Tennessee's immunity.  *See*, *e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (noting that a state is not a person under 42 U.S.C. § 1983).

The Court pauses to address plaintiff's points regarding the Eleventh Amendment. Plaintiff argues that *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011), held that the State of Tennessee, the Tennessee Department of Mental Health and Developmental Disabilities ("DMHDD"), and the commissioner of DMHDD "were properly named defendants for injunctive relief under the ADA" [Doc. 9].  Plaintiff, however, misreads *Whitfield*.  The Sixth Circuit held, instead, that the plaintiff's complaint contained an *Ex Parte Young* action for reinstatement pursuant to Title I of the ADA because it construed the complaint as suing the commissioner in her official capacity and seeking reinstatement.  639 F.3d at 257.  It did not hold that the State of Tennessee or DMHDD were properly named defendants or that they could be enjoined.  In addition, the Court finds plaintiff's reference to *Skinner v. Switzer*, 131 S. Ct. 1289 (2011), and the contention that the Supreme Court "clearly approved injunctive relief to Texas state officials under § 1983," inapposite [Doc. 9].[7]

_____

[6]The Court notes that, with respect to defendant Jones, who presumably is sued in her official capacity, the exception set forth in *Ex Parte Young* seems to apply as plaintiff seeks prospective injunctive relief against her.

[7]In his reply, plaintiff argues that defendants fail to distinguish *Skinner*, where the Supreme Court "clearly approved injunctive relief to Texas state officials under § 1983" [Doc. 9].  The Court finds *Skinner* inapposite because it did not address whether the State of Texas or any agency or arm of the State of Texas was entitled to Eleventh Amendment immunity.

22

In conclusion, the Court finds that defendants the State of Tennessee and the Board most likely are entitled to Eleventh Amendment immunity, which compels the additional finding that plaintiff is not likely to succeed on the merits of his claims against them.

## 2. Subject-Matter Jurisdiction

Defendants assert that plaintiff is not likely to succeed on the merits because the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the Supreme Court held that, pursuant to 28 U.S.C. § 1257, federal district courts lack subject-matter jurisdiction to directly review state-court decisions.[8] It later reaffirmed this holding in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), a case where "the plaintiff challenged the District of Columbia's rule for bar admission in the district court after being denied permission to sit for examination by the

---

[8]Section 1257 provides:

(a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

(b) For the purposes of this section, the term "highest court of a State" includes the District of Columbia Court of Appeals.

28 U.S.C. § 1257.

District of Columbia Court of Appeals." *Coleman v. Governor of Mich.*, 413 F. App'x 866, 870 (6th Cir. 2011) (citing *Feldman*, 460 U.S. at 468–69). In *Feldman*, the district court dismissed the plaintiff's claim for lack of subject-matter jurisdiction and the Supreme Court affirmed, finding that "[i]f the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial [of a claim] in a judicial proceeding . . . then the District Court is in essence being called upon to review the state court decision," which the district court may not do. *Feldman*, 460 U.S. at 482 n.16. Together, these decisions are referred to as the *Rooker-Feldman* doctrine, which precludes federal district courts from reviewing state-court decisions. *Coleman*, 413 F. App'x at 870; *see also In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) ("The *Rooker-Feldman* doctrine embodies the notion that appellate review of state court decisions and the validity of state judicial proceedings is limited to the Supreme Court . . . and thus that federal district courts lack jurisdiction to review such matters." (footnote omitted)).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283–84 (2005), the Supreme Court noted that some federal courts had extended the doctrine "far beyond the contours of the *Rooker* and *Feldman* cases" and narrowed the doctrine to apply only to those "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." When an individual, however, makes a claim independent from the state proceeding, "albeit one that denies a legal conclusion that a state court has reached in a case

24

to which he was a party," the Supreme Court indicated that such does not strip the court of subject-matter jurisdiction "and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293. The Supreme Court also reiterated that "a district court could not entertain constitutional claims attacking state-court judgments . . . when the constitutional attack was 'inextricably intertwined' with the state court's judgment." *Id.* at 286 n.1 (citing *Feldman*, 460 U.S. at 482 n.16).

The Sixth Circuit correspondingly "distinguished between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply." *Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Srvs.*, 606 F.3d 301, 309 (6th Cir. 2010) (citations omitted). It has explained that the relevant inquiry is whether the "source of the injury" upon which the plaintiff bases his federal claim is the state-court judgment, "not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment." *Id.* (discussing *McCormick v. Braverman*, 451 F.3d 382, 394–95 (6th Cir. 2006)). Rather, the term "inextricably intertwined," it has noted, "describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*." *Id.* at 310 (citing *McCormick*, 451 F.3d at 394–95); *see also In re Cook*, 551 F.3d at 548 (stating that "the pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether

the source of the injury upon which plaintiff bases his federal claim is the state court judgment" (citation and internal quotation marks omitted)).

Very recently, on March 7, 2011, the Supreme Court again addressed the *Rooker-Feldman* doctrine. In *Skinner v. Switzer*, 131 S. Ct. 1289 (2011), a state prisoner, who had been convicted of capital murder and sentenced to death, filed a section 1983 action, alleging that the district attorney's refusal to allow him access to biological evidence for purposes of DNA testing violated his right to due process. Prior to his section 1983 action, however, plaintiff twice unsuccessfully sought relief in state court and appealed to the Texas Court of Criminal Appeals pursuant to Article 64, a statute allowing prisoners to gain post conviction DNA testing in limited circumstances. 131 S. Ct. at 1295.

The district court dismissed Skinner's section 1983 action, observing that post conviction requests for DNA evidence are cognizable only in habeas corpus, and the Fifth Circuit affirmed. *Id.* at 1296. The Supreme Court, however, reversed. In doing so, the Supreme Court addressed an argument raised by the district attorney: whether "Skinner's challenge is '[j]urisdictionally [b]arred' by . . . the *Rooker-Feldman* doctrine." *Id.* at 1297.

After a discussion of the Supreme Court's previous decisions regarding the *Rooker-Feldman* doctrine, the Supreme Court reiterated that the doctrine occupies a "narrow ground" and "is confined to cases of the kind from which the doctrine takes its name: cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgments." *Id.* (citing *Exxon Mobile*, 544 U.S. at 284) (internal quotation marks omitted). It then found that Skinner's litigation "encounter[ed] no *Rooker-Feldman* shoal" because he

did not "challenge the adverse [Texas Court of Criminal Appeals] decisions themselves; instead, he target[ed] as unconstitutional the Texas statute they authoritatively construed." *Id.* at 1297–98. In so deciding, the Supreme Court noted that *Exxon Mobil* explained that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Id.* at 1298.

Before the Court turns to its analysis of the *Rooker-Feldman* doctrine to this case, it notes that if defendants the State of Tennessee and the Board would be dismissed pursuant to the Eleventh Amendment, then very little would remain of plaintiff's complaint. Defendant made this point during the hearing and plaintiff never opposed it. Indeed, it seems, at best, only plaintiff's claim that the practice monitor probation provision violates the Fourth, Fifth, and Fourteenth Amendments (Count I) would survive.

With respect to Count I, the Court appears to lack subject-matter jurisdiction over the claim because it directly challenges the decision of the hearing panel imposing upon plaintiff the condition of a practice monitor, which was adopted by the Tennessee Supreme Court in its June 1, 2011 order of enforcement, a final decision that was rendered before this action was commenced. The *Rooker-Feldman* doctrine would expressly prohibit review of this claim because it invites this Court to review and reject the decision to impose the practice monitor. Thus, if the Court were to find that Eleventh Amendment immunity applies as discussed above, then a finding that the Court lacks subject-matter jurisdiction over Count I would seem to address the entirety of plaintiff's complaint. Consequently, the Court concludes that plaintiff's likelihood of success on the merits is very slim.

27

Assuming that the defendants the State of Tennessee and the Board are not entitled to Eleventh Amendment immunity or that granting immunity would not eradicate most of plaintiff's claims, the Court turns to whether it would have subject-matter jurisdiction over the remaining claims.[9] Although there are ten additional claims, they are, for purposes of this discussion, one in the same because they assert one proposition, which plaintiff clarified (and repeated multiple times) during the hearing: whether Supreme Court Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 as applied in *Cawood* and the May 2, 2011 amendment to Rule 9 § 1.3, adding the *Cawood* requirements to that rule, are unconstitutional as applied to plaintiff in the state-court proceedings related to his current suspension [*See also* Doc. 14 (setting forth this challenge)].

Plaintiff's claim is an "as applied" challenge and is therefore likely barred by the *Rooker-Feldman* doctrine. *See Coleman*, 413 F. App'x at 871–72 (providing examples of "as applied" challenges and applying the *Rooker-Feldman* doctrine to the plaintiffs' "as applied" constitutional challenges to a provision of Michigan law); *Loriz v. Connaughton*, 233 F. App'x 469, 475 (6th Cir. 2007) (applying the *Rooker-Feldman* doctrine because the relief sought by plaintiffs—"a declaration that the state courts reached an improper result based on a faulty application of the law—is not a general challenge to the constitutionality

---

[9]The Court notes that the day after the hearing regarding plaintiff's request for injunctive relief, plaintiff filed a motion to amend the complaint to name "proper parties" and "for declaratory relief," recognizing that he "now understands that the Board . . . [and the State of Tennessee], although [proper parties] for the habeas corpus relief sought, [are] not a 'person' under § 1983" [Doc. 14]. Accordingly, the Court finds it appropriate to consider whether it would have subject-matter jurisdiction over the entirety of plaintiff's complaint.

of the state law, but rather a specific grievance over specific decisions"); *Berry v. Schmitt*, No. 3:09-60-DCR, 2011 WL 1376280, at *2–4 (E.D. Ky. Apr. 12, 2011) (applying the *Rooker-Feldman* doctrine to plaintiff's as applied challenge to a Supreme Court Rule because it would require the court to conduct a detailed review of the Inquiry Commission's decision that he violated that rule).

Plaintiff's source of injury here, at heart, originates from the Circuit Court's application of *Cawood* to plaintiff, and plaintiff, although not expressly, calls upon the Court to determine that such application was improper. Indeed, plaintiff is launching a direct attack on the decision applying *Cawood*, which he claims stripped him of his "favorable judgment" reversing part of the hearing panel's disciplinary decision. The hearing panel's disciplinary decision was put into effect by the Tennessee Supreme Court's June 1, 2011 order of enforcement, thus making the source of his injury and his constitutional challenge "inextricably intertwined" with that final order.[10]

Plaintiff, consequently, is a state-court loser complaining of an injury caused by a state-court decision and is inviting this Court to review and reject that decision. Indeed, during the hearing, plaintiff outlined for the Court how a favorable judgment in this case would void or vacate the decision applying *Cawood* and how he would return to state court

---

[10]Although plaintiff's allegations have been compressed into one point—whether Supreme Court Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 as applied in *Cawood* and the May 2, 2011 amendment to Rule 9 § 1.3, adding the *Cawood* requirements to that rule, are unconstitutional as applied to plaintiff—the Court notes that all of the various unconstitutional conduct complained of by plaintiff in the amended complaint is "inextricably intertwined" with the Tennessee Supreme Court's June 1, 2011 order of enforcement finalizing plaintiff's discipline.

to challenge that decision under Rule 60.02 of the Tennessee Rules of Civil Procedure. Although plaintiff has been quite careful in not requesting that this Court review or reverse any state-court decision, "the Court cannot allow artful pleading or argument to obscure what the practical effect of any potential judgment would be—a review and modification of the [decision applying *Cawood*]." *Brown v. Bowman*, No. 1:09-CV-346, 2011 WL 1296274, at *9–10 (N.D. Ind. Mar. 31, 2011) (applying the *Rooker-Feldman* doctrine to preclude review of the plaintiff's section 1983 claims, which the court found were inextricably intertwined with an order of the Indiana Supreme Court finding that the plaintiff was not eligible for admission to the bar and would require the court to confirm or reject that court's judgment).

In addition, it appears that it is possible to distinguish *Skinner*, the case upon which plaintiff primarily relies, from the instant case. In *Skinner*, the Supreme Court noted that Skinner did "not challenge the prosecutor's conduct or the decisions reached by the [Texas Court of Criminal Appeals] in applying Article 64 to his motions; instead he challenge[d] as denying him procedural due process, Texas' post conviction DNA statute 'as construed' by the Texas courts." *Skinner*, 131 S. Ct. at 1296. Plaintiff, it seems, falls into the former as opposed to the latter category. He does not challenge Rule 9 § 1.3 as unconstitutional in general, as Skinner challenged the Texas' post conviction DNA statute. Rather, he makes a challenge of the law as applied to him, and only him.

Finally, although plaintiff indicated that he was not challenging *Cawood* itself, even if he were,[11] the Court would find that such challenge also would be barred by the *Rooker-Feldman* doctrine. The Supreme Court has ruled that the *Rooker-Feldman* doctrine does not apply where the plaintiff was not a party to the state-court proceeding with which his current federal claims are inextricably intertwined unless the party directly attacks the judgment. *See Johnson v. De Grandy,* 512 U.S. 997, 1005–06 (1994).

In sum, it seems that this Court lacks subject-matter jurisdiction over all of plaintiff's claims under the *Rooker-Feldman* doctrine.[12] To that extent, plaintiff's relief would lie with the United States Supreme Court; although plaintiff asserts he has no chance of succeeding if he were to file a petition for writ of certiorari with respect to the Tennessee Supreme Court's order enforcing the Board's disciplinary findings in that court, his assessment does not dictate a different result. Hence, the Court concludes that plaintiff is not likely to succeed on the merits of his claims.[13]

---

[11]The Court notes that, in the amended complaint, plaintiff asks this Court "to hold that Tennessee's construction in *Cawood* of Rule 9, § 1.3 and T.C.A. § 27-9-101 et seq. for the requirements for judicial review of the [h]earing [p]anel's judgment is unconstitutional" [Doc. 6]. Depending upon one's reading of this request, it could be construed as challenging *Cawood* itself.

[12]The Court notes that defendants have not asked the Court to dismiss this action, but consider their arguments only in the context of whether plaintiff is likely to succeed on the merits of his claims. The Court also recognizes that a finding that the Court lacks subject-matter jurisdiction would compel dismissal, even *sua sponte*, but it declines to do so at this time given the procedural posture of the case and the Court's review of the jurisdictional issue within the context of the factors related to plaintiff's request for injunctive relief.

[13]Without ruling on plaintiff's motion to amend, the Court notes that the substance of that motion does not change the Court's conclusion that it is unlikely that it has subject-matter jurisdiction over this action and that, therefore, plaintiff is not likely to succeed on the merits of his claims.

31

### 3. *Younger* Abstention

Defendants argue that, with respect to plaintiff's petition for habeas corpus, the abstention doctrine derived from *Younger v. Harris*, 401 U.S. 37 (1971), poses an additional bar to plaintiff's likelihood of success. "In *Younger*, the United States Supreme Court counseled federal courts to abstain from enjoining certain pending state court criminal proceedings." *Danner*, 277 F. App'x at 576. The doctrine has been extended to apply to both ongoing state civil and administrative proceedings. *Id.* at 578 (citations omitted). Pursuant to the doctrine, a federal court should abstain when three criteria are met:

(1) the underlying proceedings constitute an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the course of the underlying proceeding.

*Id.* (citing *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003); *Tindall v. Wayne Cnty. Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001).

The parties debate whether plaintiff's state habeas action is "ongoing." In determining whether it was ongoing, the Court must look to the day of the federal complaint's filing. *See Loch*, 337 F.3d at 578. If the state proceeding was pending at the time of the filing, then the matter is "ongoing" for purposes of *Younger* abstention. *Loch*, 337 F.3d at 578 (citing *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986)). "It remains pending until a litigant has exhausted his state appellate remedies." *Id.* (citations omitted). Here, plaintiff filed his state request for habeas relief in the Knox County Criminal Court on February 11, 2011 [Doc. 8-5]. The action was dismissed on May 10, 2011 [Doc. 8-6]. Plaintiff appealed that

decision on June 9, 2011 [Doc. 8-7]. Plaintiff claims that the Tennessee Supreme Court's June 1, 2011 order of enforcement "dismissed and denied [p]laintiff a one-level appeal as of right from the [t]rial [c]ourt's application of *Cawood* to deny [p]laintiff the favorable judgment and deny [p]laintiff access to rules and statutes for relief from the [h]earing [p]anel judgment" [Doc. 9]. Plaintiff, however, has not provided the Court with any indication that an appellate court has ruled on his appeal of the May 10, 2011 order of the Knox County Criminal Court. Further, a review of the Tennessee Supreme Court's order of enforcement indicates that the Tennessee Supreme Court merely denied plaintiff's motion to consolidate his appeal and his state habeas action as moot—it did not rule on the merits of plaintiff's state habeas action. Accordingly, plaintiff's state habeas action was "ongoing" at the time he filed his complaint in this action on June 27, 2011. The Court thus finds that first element of the *Younger* abstention doctrine is likely satisfied.

With respect to the second *Younger* element, "[t]here can be no serious question that the regulation and discipline of attorneys is an important state function." *Danner*, 277 F. App'x at 579. Thus, the Court finds that the second element of the *Younger* abstention doctrine is likely satisfied.

With respect to the third *Younger* element, the Sixth Circuit has noted:

> Abstention is appropriate "unless state law clearly bars the interposition of the constitutional claims." The plaintiff bears the burden of showing that state law barred presentation of his or her constitutional claims. Once this third and final requirement is met, abstention is appropriate "unless the plaintiff can show that one of the exceptions to *Younger* applies, such as bad faith, harassment, or flagrant unconstitutionality."

33

*Id.* (citing *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006) (internal citations omitted).

In his discussion of the application of collateral estoppel, plaintiff argues that Tennessee's habeas corpus statute is limited by the terms of the statute and does not reach the liberty interest provided for by the *ex post facto* clause. Plaintiff, however, provides no support for this contention and the Court notes that "[s]tate court judges are bound by the United States Constitution and state courts are presumed hospitable to federal claims," a presumption that is set aside only "when 'it plainly appears that [pursuit of constitutional claims in state court] would not afford adequate protection.'" *Terrell v. Rosenbalm*, No. 3:11-CV-236, 2011 WL 2516762, at *2 (E.D. Tenn. June 23, 2011) (citations omitted).

It appears that there is an adequate opportunity to raise the constitutional challenges in the course of the state habeas action and it does not plainly appear that the pursuit of plaintiff's constitutional claims in state court will not afford adequate protection. Further, plaintiff has not shown that an exception to *Younger* applies. *See, e.g., Deters v. Davis*, No. 3:11-02-DCR, 2011 WL 127166, at *8–9 (E.D. Ky. Jan. 14, 2011) (discussing the narrowness of the exception and cases considering the exception). The Court thus finds that the third element of the *Younger* abstention doctrine is likely satisfied.

Accordingly, with respect to plaintiff's habeas corpus petition, the Court concludes that *Younger* abstention may be appropriate. In a case such as this, where plaintiff does not seek damages, if *Younger* applies, the proper course for this Court would be to dismiss without prejudice. *Louisville Country Club v. Ky. Comm'n on Human Rights*, 221 F.3d 1335, 1335 (6th Cir. 2000); *cf. Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir.

34

1998) (holding that, when abstaining from damages claims, the proper course of action is to stay rather than dismiss). Thus, the Court further concludes that plaintiff is not likely to succeed on the merits of his petition for habeas corpus.

Although no party raised whether *Younger* applies in any other context in this case, the Court, in reviewing the record, finds that *Younger* may require the Court to abstain from plaintiff's primary challenge with respect to his section 1983 claim: whether Supreme Court Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 as applied in *Cawood* and the May 2, 2011 amendment to Rule 9 § 1.3, adding the *Cawood* requirements to that rule, are unconstitutional as applied to plaintiff in the state-court proceedings related to his current suspension. *See Coleman v. Jones*, No. 3:10-CV-163, 2010 WL 1643276, at *3 (E.D. Tenn. Apr. 21, 2010) (noting that the Court may raise *Younger sua sponte*). It appears, with respect to the Circuit Court's February 18, 2011 order applying *Cawood*, that plaintiff filed a notice of appeal, and that appeal is still pending [*See* Doc. 8-1 (denying plaintiff's motion to consolidate the appeal of the February 18, 2011 order with the Board's request to enforce the disciplinary judgment)]. Thus, for all the reasons explained with respect to the state habeas claim, the Court finds that *Younger* may require this Court to abstain from plaintiff's section 1983 action as well.

In sum, the Court concludes that plaintiff is not likely to succeed on the merits of his claims because of the Eleventh Amendment, because this Court likely lacks subject-matter jurisdiction, and because this Court may be required to abstain under *Younger*. This factor thus weighs heavily against plaintiff.

### B.     Irreparable Harm

Plaintiff argues that he will be irreparably harmed in various ways in the event the Court does not issue an injunction. He claims that, if the Court does not grant an injunction, by the time the Court reaches the merits of his case he will have served all of his active suspension, as well as a large portion of his probationary period. With respect to the practice monitor provision specifically, plaintiff argues that he will suffer financially because he will be required to pay for the monitor—the Court was informed during the hearing that the monitor would be various attorneys from the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC—and that there is no form of relief in terms of monetary damages because of the Eleventh Amendment. Plaintiff further asserts that the practice monitor most likely will have unconstitutional access to attorney-client or attorney work product materials and present other constitutional concerns. Additionally, plaintiff also argues that one day of suspension could mean that he could lose a significant case. Finally, plaintiff argues that he is suffering from humiliation and shame.

Although some of plaintiff's harm is hypothetical at this point (especially some of the harm related to the practice monitor) and some harm has already occurred, in the event plaintiff is successful in this action, he may suffer some irreparable harm absent an injunction enjoining the enforcement of the disciplinary judgment because it appears plaintiff cannot be compensated by money damages. Nevertheless, it was discussed during the hearing that the Board will meet in September 2011 and that plaintiff would have an opportunity to be heard on the practice monitor provision at that meeting. Thus, to the extent that the provision

is as "catastrophic" as plaintiff believes it may be, plaintiff will have an opportunity, within two months of his ten-and-one-half month probationary period, to address the terms of such with the Board. Accordingly, the Court finds that this factor weighs slightly in favor of issuing an injunction.

## C. Harm to Others

A state has important interests in "maintaining its justice system [and] assuring the professional conduct of the attorneys it licenses." *Deters*, 2011 WL 127166, at * 11; *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982). If the Court were to enjoin the enforcement of the disciplinary judgment, it would be interjecting itself into a state process, and the State of Tennessee has a strong interest in enforcing that judgment without federal court interference. This factor thus weighs against issuing an injunction.

## D. Public Interest

Again, states have interest in "maintaining and assuring the professional conduct of the attorneys [they] license[]." *Middlesex*, 457 U.S. at 434. "The ultimate objective of such control is 'the protection of the public, the purification of the bar and the prevention of a re-occurrence." *Id.* (citation omitted). Given the Tennessee Supreme Court's order of enforcement, the public interest therefore would not be served by granting plaintiff's request for relief from that enforcement. Accordingly, this factor weighs against issuing an injunction.

## III.   Conclusion

For reasons explained above, the four factors the Court must consider in determining whether to grant preliminary injunctive relief weigh in favor of denying plaintiff's request. Accordingly, and although the Court understands plaintiff's frustration with the procedural circumstances that brought him to this Court, the Court cannot grant the requested injunctive relief. The Court hereby **ORDERS** that plaintiff's request for injunctive relief [Docs. 2, 10] is **DENIED**.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE