| | |
|---|---|
| HERBERT S. MONCIER, | ) |
| | ) |
| Plaintiff, | ) |
| | )   No. 3:11-CV-301 |
| | )   (VARLAN/SHIRLEY) |
| v. | ) |
| | ) |
| NANCY JONES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the orders of the District Judge, referring various motions to the undersigned for disposition or report and recommendation, as may be appropriate.

## I.   BACKGROUND[1]

On July 30, 2008, Defendant Nancy Jones, Chief Disciplinary Counsel for the Board of Professional Responsibility of the Supreme Court of Tennessee ("the Board"), filed a petition for disciplinary action against the Plaintiff. A hearing was held before a Hearing Panel of the Board ("the Hearing Panel"), and on January 13, 2010, the Hearing Panel issued its decision, which imposed an eleven month and twenty-nine-day suspension, with all but forty-five days of the suspension probated. [Doc. 8-1 at 1]. The Board considered the Hearing Panel's Judgment on March 12, 2010.

The Plaintiff appealed the Hearing Panel's judgment, and a special trial judge was appointed pursuant to Tennessee Supreme Court Rule 9, Section 1.5. On September 10, 2010,

---

[1] The history of this matter prior to the instant case being filed is thoroughly reviewed in the Memorandum Opinion and Order entered by the Court on July 19, 2011, <u>Moncier v. Jones</u>, No. 3:11-CV-301, 2011 WL 2940442 (E.D. Tenn. 2011) (Varlan, J.).

the trial judge filed a memorandum opinion and order affirming in part and reversing in part the Hearing Panel's judgment and remanding the matter to the Hearing Panel for reconsideration.

On December 20, 2010, while the Plaintiff was awaiting a new hearing before the Hearing Panel, the Supreme Court of Tennessee issued its opinion in <u>Board of Professional Responsibility v. Cawood</u>, 330 S.W.3d 608 (Tenn. 2010), which the Plaintiff maintains "changed the routine and customary practice for obtaining judicial review in Tennessee disciplinary proceedings." [Doc. 1 at ¶ 13]. In <u>Cawood</u>, the Supreme Court held that the aggrieved party filing a "petition of certiorari" in an appeal from a Board decision must comply with the requirements of Tennessee Code Annotated § 27-8-106. Section 27-8-106 requires that a petition for certiorari must: (1) be sworn before "the clerk of the circuit court, the judge, any judge of the court of general sessions, or a notary public" and (2) "state that it is the first application for the writ."

Based upon the decision in <u>Cawood</u>, the Board filed a motion asking the trial court to set aside its memorandum opinion and order entered September 10, 2010, and to find that the Plaintiff's petition for writ of certiorari was insufficient to confer subject matter jurisdiction upon the trial court because it did not satisfy § 27-8-106. On February 18, 2011, the trial court granted the Board's motion and set aside its previous order. On the same day, the Plaintiff filed a notice of appeal.

On March 9, 2011, the Board submitted a proposed order of enforcement to the Supreme Court of Tennessee, as directed by Tenn. Sup. Ct. R. 9, section 8.4. On March 14, 2011, the Plaintiff filed a motion seeking to stay enforcement of discipline until the conclusion of his appeal; in the alternative, he requested an opportunity to respond to the Board's proposed order of enforcement. He was afforded an opportunity to respond, but his request for a stay was

2

denied. On May 9, 2011, the Plaintiff filed a response, formally raising fifteen issues, and the next day, he filed six separate motions with the Supreme Court. The Board responded in opposition.

On June 1, 2011, the Supreme Court of Tennessee stated that it had "thoroughly considered the Board's proposed order of enforcement, Mr. Moncier's response, the Board's reply, Mr. Moncier's motions, and the Board's responses to those motions," and concluded that "the punishment imposed by the Hearing Panel [was] neither inadequate nor excessive, but rather is appropriate under the circumstances of this case and consistent with the goal of attaining uniformity of punishment throughout the State." [Doc. 8-1 at 3].

The Supreme Court ordered:

> 1. Mr. Herbert S. Moncier shall be suspended from the practice of law for a period of eleven (11) months and twenty-nine (29) days, pursuant to Supreme Court Rule 9, section 4.1.
>
> 2. The first forty-five (45) days of Mr. Moncier's suspension shall be an active suspension pursuant to Supreme Court Rule 9, section 4.2.
>
> 3. Mr. Moncier's remaining suspension, after the first forty-five (45) days, shall be stayed in conjunction with a period of ten and one-half (10½) months of probation, pursuant to Supreme Court Rule 9, section 8.5.
>
> 4. The following conditions are imposed upon Mr. Moncier's probation of ten and one-half (10½) months:
>
>> a. Mr. Moncier shall complete an additional twelve (12) hours of ethics continuing legal education over and above the required three (3) hours of ethics CLE during his period of probation; and
>>
>> b. The Board of Professional Responsbility shall assign a practice monitor to monitor Mr. Moncier's practice and court appearances for the duration of his probation and

> report immediately to the Board any behavior in violation of the Rules of Professional Conduct.
>
> 5. The suspension shall become effective ten (10) days after the filing of this Order.

[Doc. 8-1 at 3-4]. The Supreme Court also ordered the Plaintiff to pay the expenses and costs incurred by the Board in the matter before the court totaling $22,038.32. The court ordered the Plaintiff to comply with provisions applying to suspended attorneys and directed that the Board give notice of the suspension. Further, the court denied all of the Plaintiff's pending motions. [Doc. 8-1 at 4].

On June 27, 2011, the Plaintiff filed the instant suit alleging various constitutional violations, and on July 19, 2011, the Honorable Thomas A. Varlan, United States District Judge, entered an order denying the Plaintiff's initial request for injunctive relief, [Doc. 18]. Since that time, the Plaintiff has filed five motions to amend, which the Court has granted.

The Defendants have filed a Motion to Dismiss [Doc. 23]. The Plaintiff has also filed a Second Application for Temporary Injunction [Doc. 33] and a Third Supplemental Application for Temporary Injunction [Doc. 41]. The Honorable Thomas A. Varlan, United States District Judge, has referred each of these motions to the undersigned for report and recommendation. [See Docs. 39, 43]. For the reasons stated below, the undersigned will **RECOMMEND** that these motions be **GRANTED IN PART** and **DENIED IN PART**.

## II. POSITIONS OF THE PARTIES

The parties' positions on the pending motions are as follows.

### A. Defendants' Motion to Dismiss

In their Motion to Dismiss, the Defendants move the Court to dismiss this case pursuant

4

to Rule 12 of the Federal Rules of Civil Procedure. The Defendants argue that neither the State of Tennessee, the Board, Nancy Jones, nor any of the proposed defendants in their official capacities are persons for purposes of § 1983, except for prospective injunctive relief. The Defendants maintain that the Plaintiff's requests for relief, which are expressly "as applied," are barred by the *Rooker-Feldman* doctrine. The Defendants contend that the Plaintiff has not requested any prospective relief that would not have the effect of undoing the Order of Enforcement by the Supreme Court of Tennessee.

For the sake of argument, the Defendants contend that even if the Plaintiff had sought prospective declaratory relief against the Defendants, such relief is "meant to define the legal rights and obligations of parties in anticipation of some future conduct, not simply to proclaim liability for a past act." Lawrence v. Kuenhold, 271 Fed. App'x 763, 766 (10th Cir. 2008). The Defendants maintain that the Plaintiff does not, and could not reasonably, seek such a declaration in these circumstances.

Alternatively, the Defendants argue that Defendant Jones and all of the proposed defendants enjoy judicial, quasi-judicial, and/or quasi-prosecutorial immunity.

In his Response, the Plaintiff maintains that the Tennessee Supreme Court did not consider the motions he filed in opposition to the Order of Enforcement, and therefore, the *Rooker-Feldmen* doctrine does not apply in this case. The Plaintiff argues that the Supreme Court in an Order entered August 28, 2011, directed that the Plaintiff could pursue a remedy via Supreme Court Rule 9, section 8.5. The Plaintiff maintains that section 8.5 provides no remedy for the constitutional remedies he has pled. [Doc. 30 at 2]. With regard to the probation terms imposed upon him, the Plaintiff argues that those terms were not decided in the Order entered June 1, 2011, and therefore, the *Rooker-Feldmen* doctrine cannot serve as a bar to those claims.

5

[Doc. 30 at 3]. Further, the Plaintiff argues that he has demonstrated a lack of an "adequate and meaningful" state court remedy, so as to make abstention under the *Younger* doctrine inappropriate. [Doc. 30 at 4-5].[2]

**B.      Plaintiff's Motions for Injunctive Relief**

The Plaintiff has also filed two applications for injunctive relief. In his Second and Supplemental Application for a Temporary Injunction, the Plaintiff moves the Court to enjoin Defendant Jones from prospectively enforcing probation terms that allegedly violate provisions of the United States Constitution. [Doc. 33 at 1].

Plaintiff alleges:

> Beginning the next day on July 20, 2011, and continuing through August 19, 2011, Defendant Jones has, and continues to, unlawfully, and in violation of the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, dictate probation terms under color of state law that Plaintiff is being required to comply with for alleged misconduct that Plaintiff has had no notice or opportunity to be heard; probation terms that are constantly changing, are undefined and are overly vague; probation terms that are arbitrary and capricious; probation terms that interfere with existing employment contracts with Clients; and probation terms that require Plaintiff provide confidential, privileged and protected information belonging to him, and his Clients, that Defendant Jones represented to this Court on July 13, 2011 would not be required.

[Doc. 33 at 2]. Plaintiff argues that he is suffering immediate harm and irreparable injury, and will continue to suffer such harm and injury, by being required to comply with unconstitutional probation terms required of him. [Doc. 33 at 4]. The Plaintiff maintains that a "final judgment in this case in Plaintiff's favor will be ineffective if Plaintiff is required to continue to comply

---

[2] In responding, the Plaintiff also restates his allegations of other misdeeds and wrongs. He argues that: the Board has not acted consistent with a statement by counsel at the hearing before Judge Varlan indicating that the Board would hear his grievances at the Board's September meeting; Defendant Jones has increasingly demanded that the Plaintiff provide "confidential, privileged and protected information" related to his practice; and he has been denied due process by the imposition of additional probation terms and selection of a probation monitor. [Doc. 30 at 5-15].

6

with the probation terms being required of Plaintiff by Defendant Jones until final judgment." [Doc. 33 at 4].

In his "Supplemental Application For A Temporary Injunction," the Plaintiff again moves the Court for an order "enjoining Defendant Nancy S. Jones from prospectively enforcing probation terms that violate provisions of the United States Constitution." [Doc. 41 at 1]. Therein, "Plaintiff avers that Defendants forfeited and are collaterally estopped from claiming federal relief under *Younger v. Harris* by their taking extraordinary measures to prevent Plaintiff from presenting his First, Fifth and Fourteenth Amendment l claims in Tennessee's Courts." [Doc. 41 at 2]. The Plaintiff has filed a further supplement to the same end, [Doc. 45], which the Court has reviewed.

The Defendants respond to and dispute each of the Plaintiff's allegations of error and constitutional violation. [See Docs. 38, 46]. "Stated briefly, [the Defendants' position is that] federal district courts have no original or appellate jurisdiction in state bar attorney disciplinary proceedings; the *Younger* abstention doctrine bars the exercise of federal jurisdiction as to all matters raised in the Fourth Motion to Amend and Supplemental Application; and Plaintiff has failed to state a section 1983 claim against any Defendant." [Doc. 38 at 3, Doc. 46 at 3]. The Defendants maintain that the Plaintiff is requesting unprecedented relief without supporting authority. [Doc 46 at 4].

## III. ANALYSIS

Initially, the Court would note that on November 4, 2011, the Court heard from the parties for over six hours. By the Court's estimation, the Plaintiff presented three hours of uninterrupted argument, along with other remarks, during this hearing. The docket in this case

now consists of 57 filings that total just shy of 1500 pages. The Court has thoroughly considered the issues, arguments, allegations of constitutional violations, and grievances brought before it. The Court will not, however, undertake to specifically decipher and discuss each minute aspect of the Plaintiff's position. To do so would be in direct contradiction to Rule 1 of the Federal Rules of Civil Procedure's direction that the Court "secure the just, speedy, and inexpensive determination of every action and proceeding." Suffice it to say, the Court has considered all that is before it in reaching the below conclusions.

**A.      Pursuant to the *Rooker-Feldmen* Doctrine, the Court Lacks Jurisdiction Over Any Claims Against the Defendants, Except for Claims for Prospective Relief**

In Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), the Supreme Court of the United States found that a district court has no power to declare a judgment of a state court, affirmed by the state supreme court, void on the theory that the state supreme court made rulings violating provisions of the federal Constitution. Id. at 416. In finding that the district court lacked jurisdiction, the Court explained, "A reading of the entire bill shows indubitably that there was full jurisdiction in the state courts and that the bill at best is merely an attempt to get rid of the judgment for alleged errors of law committed in the exercise of that jurisdiction." Id.

Over sixty years later, in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), the Court reiterated that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." Id. at 482. The Court affirmed that review of such judgments is limited to review before the Supreme Court of the United States. Id.

These holdings together form the *Rooker-Feldman* doctrine, which directs that district courts lack jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

8

inviting district court review and reject those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see also Skinner v. Switzer, ___ U.S. ___, 131 S. Ct. 1289, 1291 (2011).

In addressing the application of the *Rooker-Feldman* doctrine to the Plaintiff's initial complaint, Judge Varlan explained:

> [T]he Court appears to lack subject-matter jurisdiction over the claim because it directly challenges the decision of the hearing panel imposing upon plaintiff the condition of a practice monitor, which was adopted by the Tennessee Supreme Court in its June 1, 2011 order of enforcement, a final decision that was rendered before this action was commenced. The *Rooker-Feldman* doctrine would expressly prohibit review of this claim because it invites this Court to review and reject the decision to impose the practice monitor.

[Doc. 18 at 27]. Judge Varlan continued:

> Although there are ten additional claims, they are, for purposes of this discussion, one in the same because they assert one proposition, which plaintiff clarified (and repeated multiple times) during the hearing: whether Supreme Court Rule 9 § 1.3 and Tenn. Code Ann. § 27-9-101 as applied in *Cawood* and the May 2, 2011 amendment to Rule 9 § 1.3, adding the *Cawood* requirements to that rule, are unconstitutional as applied to plaintiff in the state-court proceedings related to his current suspension.
>
> Plaintiff's claim is an "as applied" challenge and is therefore likely barred by the *Rooker-Feldman* doctrine.

[Doc. 18 at 28].

The Plaintiff has filed approximately half a dozen motions to amend his Complaint that the Court granted contemporaneously with the entry of this Report and Recommendation. While these amendments play with semantics and modify claims to confer jurisdiction on this Court, it remains clear that Plaintiff's suit is, essentially, an action brought by a state-court litigant complaining of injuries caused by state-court judgments rendered, inviting this Court to review

9

and reject those judgments.  <u>See</u> <u>Exxon Mobil</u>, 544 U.S. at 284.  The Plaintiff's arguments at the hearing before the undersigned undeniably sought to remedy the Tennessee courts' application of case law and regulations to the Plaintiff.  <u>See</u>, <u>e.g.</u>, Doc. 56 at 14 ("[S]omehow they applied this new *Cawood* rule backward to me."); Doc. 56 at 26 ("Tennessee -- and this was my complaint -- has construed its rules and its statutes in *Cawood* and then has applied those changes to me to prevent me from having access to Tennessee's courts . . . ."); Doc. 56 at 28 ("Tennessee is applying a statute in such a manner as to be unconstitutional to deny me access to Tennessee courts for a remedy for the wrongs that were done me."); Doc. 56 at 36 ("[N]ot only is Tennessee denying me notice and the equal protection of Tennessee law by applying *Cawood* to take away my favorable judgment and any access to Tennessee courts, but now they are using it as a sword.");  Doc. 56 at 52 ("Tennessee is applying its *Cawood* rule to prevent me from having access to Tennessee's courts, statutes, and rules to provide a remedy in Tennessee.").

The undersigned finds that the Court lacks subject-matter jurisdiction over all claims that seek to directly challenge the decision of the Hearing Panel imposed upon Plaintiff, as adopted by the Tennessee Supreme Court in its June 1, 2011 order of enforcement, a final decision that was rendered before this action was commenced.  The Court finds that all of these claims constitute "as applied" constitutional challenges and are barred by the *Rooker–Feldman* doctrine. <u>See</u> <u>Coleman v. Governor of Mich.</u>, 413 Fed. App'x 866, 872 (6th Cir. 2011).

The undersigned, however, does find that the Court retains subject matter jurisdiction to address the specific claims discussed below.

10

**B.** **The Plaintiff has Made a Cognizable Claim for Prospective Relief Against Nancy Jones**

The *Rooker-Feldman* doctrine prohibits district courts from hearing claims seeking injunctive relief if the claims for injunctive relief necessarily require the district court to determine that a state court judgment was erroneously entered. Lawrence v. Welch, 531 F.3d 364, 371 (6th Cir. 2008).

In addition to the allegations and claims that relate to the application of law to the facts of the Plaintiff's case in state court, the Plaintiff has presented an allegation that the probation terms in this case have been improperly modified by Defendant Jones while the Plaintiff was serving his active suspension and during the pendency of his probation. The undersigned finds that this claim for injunctive relief does not necessarily require the Court to determine that the state court judgment was erroneously entered. Thus, the Court has jurisdiction over this issue and will address its merits.

The Plaintiff's requests for relief are presented in such a disjunctive and duplicative nature that it is difficult to ascertain the exact portion of the Plaintiff's numerous proposed complaints where he states this claim for injunctive relief. The explanation of "Claim 1.09," contained in the "Plaintiff's Second Amended And Supplemental Complaint," however, comes close, explaining, "Tenn. Sup. Ct. R. 9, § 8.5 provides that designation of a probation monitor and establishing probation terms are a duty of the Hearing Panel, or reviewing Court, and as such are judicial duties under Tenn. R. Sup. Ct. 23.3 and the Tennessee Rules of Civil Procedure; the Tennessee Administrative Procedures Act; and the Application Rule to the Tennessee Code of Judicial Conduct." [Doc. 31-1 at 30]. This allegation is coupled with a request for injunctive relief. [Doc. 31-1 at 39].

11

The Plaintiff stated his allegation and claim for injunctive relief more directly at the hearing, when he stated:

> Rule 9 § 8.5 says that the Hearing Panel has the authority to place an attorney on probation, number one. Number two, if the attorney is placed on probation, the Hearing Panel judgment "must in writing in the judgment" establish the probation terms. That was not done in this case. Number three, the Hearing Panel or a reviewing court shall designate a probation monitor. That was not done in this case.
>
> The core of where I am hoping to convince this Court today to put a stop to what is happening in Tennessee temporarily, only temporarily, is Nancy Jones doing these things; that is, dictating probation terms and designating probation monitors. That the law in Tennessee provided me the right to be heard before the Hearing Panel and require the Hearing Panel to do that, or a reviewing court to do that.

[Doc. 58 at 9]

Section 8.5 of Rule 9 of the Rules of the Supreme Court of Tennessee addresses attorney discipline. It states:

> **8.5. Probation.** In the discretion of the hearing panel or a reviewing court, the imposition of a suspension for a fixed period (Section 4.2) may be suspended in conjunction with a fixed period of probation. The conditions of probation shall be stated in writing in the judgment of the hearing panel or court. Probation shall be used only in cases where there is little likelihood that the respondent will harm the public during the period of rehabilitation and where the conditions of probation can be adequately supervised. A probation monitor may be designated to supervise the respondent's compliance with the conditions of probation. The respondent shall pay the costs associated with probation, including without limitation a reasonable fee for the probation monitor.
>
> In the event the respondent violates or otherwise fails to meet any condition of probation, Disciplinary Counsel is authorized to file a petition to revoke probation. Upon the filing of such a petition, a revocation hearing shall be conducted in the same manner as a hearing on a petition to initiate a formal disciplinary proceeding filed pursuant to Section 8.2. The only issue in such a proceeding is whether probation is to be revoked; the original judgment

12

> imposing the fixed period of probation may not be reconsidered.
>
> Probation shall terminate upon the expiration of the fixed period of probation. Probation may be terminated earlier by the tribunal (hearing panel or court) which imposed the period of probation upon the filing of a motion and an affidavit by respondent showing compliance with all the conditions of probation and an affidavit by the probation monitor, if one is designated, stating that probation is no longer necessary and summarizing the basis for that statement. Disciplinary Counsel shall file a response to any such motion to terminate probation. The tribunal may conduct whatever hearings are necessary to decide the motion to terminate probation. The tribunal's ruling on the motion may be appealed pursuant to Section 1.3.

Though Section 8.5 does not state who will designate the probation monitor, it does state that the probation terms "shall be stated in writing in the judgment of the hearing panel or court."

In its Order of Enforcement, the Supreme Court of Tennessee stated two conditions for the Plaintiff's period of probation. First, the Plaintiff was required to complete an additional twelve hours of ethics continuing legal education over and above the standard requirement of three hours of ethics continuing legal education. In addition, the Supreme Court ordered, "The Board of Professional Responsibility shall assign a practice monitor to monitor Mr. Moncier's practice and court appearances for the duration of his probation and report immediately to the Board any behavior in violation of the Rules of Professional Responsibility." [Doc. 8-1 at 4].

The Plaintiff seeks to enjoin his probation, arguing: (1) a hearing panel has the authority to place an attorney on probation; (2) if the attorney is placed on probation, a hearing panel judgment "must in writing in the judgment" establish the probation terms; and (3) the Hearing Panel or a reviewing court must designate a probation monitor.

As to his first complaint, the Plaintiff is correct in part — a hearing panel has the authority to place an attorney on probation. The Plaintiff, however, neglects to mention that a

13

reviewing court may also place an attorney on probation.  In this case the Supreme Court of Tennessee placed the Plaintiff on probation.

In reference to the second requirement, the Plaintiff correctly states that a hearing panel must state the terms of probation in writing, but again, the reviewing court may also state the terms in writing.  Specifically, Section 8.5 directs, "The conditions of probation shall be stated in writing in the judgment of the hearing panel or court."  In this case, the question is whether, the Supreme Court of Tennessee presented the terms of the Plaintiff's probation in writing when they stated his additional legal education requirements and stated that the Board was to assign a monitor.  The Court finds it did.

Whether the written ruling of the Supreme Court of Tennessee was complied with is not clear.  The Order of Enforcement of the Supreme Court of Tennessee stated that the Board, not Counsel to the Board, would assign a practice monitor.  At the hearing before the Court, the following exchange with counsel for the Defendants was had:

THE COURT: Did the Board choose the monitor?

MR. WATTS: No, Ms. Jones did.

THE COURT: So there are not just two choices. You said either the Board or Mr. Moncier. It was neither one.

MR. WATTS: I said there were two choices for the Supreme Court to order to do it. There were two parties to the case; the Board and Mr. Moncier.

THE COURT: The Supreme Court chose the Board to [choose] the monitor?

MR. WATTS: Yes, sir.

14

> THE COURT: You just told me the Board did not choose the monitor.
>
> MR. WATTS: That's right. Ms. Jones --
>
> THE COURT: Even though the Supreme Court ordered them to.
>
> MR. WATTS: The Board carries out its day to day activities through its staff. To order a practice monitor is quite a common occurrence.

[Doc. 58 at 102-03]. Counsel for the Defendants, thus, conceded that Defendant Jones, Disciplinary Counsel for the Board, rather than the Board selected the Plaintiff's practice monitor.

It is tempting to endorse counsel's argument that the assignment of a practice monitor[3] is a day-to-day or ministerial activity, properly delegated to Defendant Jones. To do so would, however, require the Court to disregard the specific statutory duties assigned to Disciplinary Counsel. Section 7.1 of Rule 9 of the Rules of the Supreme Court of Tennessee states that the Supreme Court shall appoint Disciplinary Counsel, who will serve at the pleasure of the Supreme Court. Section 7.1 directs that, "[f]ollowing his or her appointment by the Court, the chief Disciplinary Counsel shall report to the Board . . . ." This statement strongly implies that the Board and Disciplinary Counsel are not one in the same under the Rules of the Tennessee Supreme Court.

---

[3] In the Enforcement Order, the Tennessee Supreme Court refers to a "practice monitor." Section 8.5 of Rule 9 of the Rules of the Supreme Court of Tennessee refers to a "probation monitor." The parties used these terms interchangeably at the hearing and did not attempt to differentiate them in any manner. Thus, the Court has treated the terms as being synonymous, but the Court will use the term "practice monitor" as used in the Enforcement Order entered by the Tennessee Supreme Court.

15

Section 7.2 of Rule 9 states the duties of Disciplinary Counsel as follows:

**7.2.** Disciplinary Counsel shall have the power and duty:

(a) With the approval of the Board, to employ and supervise staff needed for the performance of counsel's duties.

(b) To investigate all matters involving possible misconduct.

(c) To dispose of all matters involving alleged misconduct by either dismissal, informal admonition, or the prosecution of formal charges before a hearing panel. Except in matters requiring dismissal because the complaint is frivolous and clearly unfounded on its face or falls outside the Board's jurisdiction, no disposition shall be recommended or undertaken by Disciplinary Counsel until the accused attorney shall have been afforded the opportunity to state a position with respect to the allegations against the attorney.

(d) To prosecute in a timely manner all disciplinary proceedings and proceedings to determine incapacity of attorneys before hearing panels, trial courts, and the Supreme Court.

(e) To investigate, file pleadings, and appear at hearings conducted with respect to petitions for reinstatement of suspended or disbarred attorneys or attorneys transferred to inactive status because of disability, or with respect to petitions for voluntary surrenders of law licenses, and to cross-examine witnesses testifying in support of any such petitions, and to marshal and present available evidence, if any, in opposition thereto.

(f) To file with the Supreme Court certificates of conviction of attorneys for crimes.

(g) To maintain permanent records of all matters processed and the disposition thereof.

(h) To give advisory ethics opinions to members of the bar pursuant to Section 26.

(i) To implement the written guidelines adopted by the Board and approved by the Court pursuant to Section 5.5(b), and to file reports with the Board on a monthly basis demonstrating Disciplinary Counsel's substantial compliance with the guidelines.

Tenn. Sup. Ct. R. 9, § 7.2.

16

The Defendants argue that Section 7.2's statement that Disciplinary Counsel may "dispose of" matters empowered her to take her actions in this case.  [Doc. 24 at 18].  The Court finds this argument to be unpersuasive.  Nowhere in the above list of duties does it state that Disciplinary Counsel has the power to assign practice monitors in the place of the Board, nor does it state that Disciplinary Counsel may dispose of day-to-day matters of the Board, including assigning practice monitors.  It does not state generally that Disciplinary Counsel may act as the Board in matters, nor does it include any catch-all provision assigning additional duties to Disciplinary Counsel, as appropriate.

The Court finds that the selection of the practice monitor and assignment of duties to this monitor by Defendant Jones did not comply with the Order of Enforcement of the Supreme Court, and as a result, the undersigned will recommend that the Court grant the Plaintiff's request for injunctive relief to the limited extent that it requests the probation be enjoined pending the selection of a practice monitor and assignment of duties to the monitor by the Board, rather than Defendant Jones.  The Court finds that this request and the remedy provided are not barred by *Rooker-Feldman* because the Court is not reviewing the judgment of the Supreme Court of Tennessee.  Instead, the Court is recommending an order directing compliance with the terms of the Order of Enforcement of the Supreme Court of Tennessee.

The selection of and assignment of duties to a practice monitor is particularly relevant in this matter in that this Court notes – but does not rule – that Plaintiff makes a persuasive argument that the nature and extent of some of the terms and conditions of the duties assigned to the practice monitor are potentially, unduly burdensome, unreasonably expensive, and/or not reasonably related to the conduct being disciplined and to be monitored.  The Court need not rule on whether or not the terms and conditions are unreasonable, in as much as the recommendation

17

being made envisions a new decision regarding the practice monitor being made by the Board, at which time the scope of the monitoring and the terms and conditions of that monitoring can be determined by the Board.

Finally, before leaving this issue, the Court finds that it is not necessary to rule upon the Defendant's allegation that "the Hearing Panel or a reviewing court must designate a probation monitor." Section 8.5 does not state by whom a practice/probation monitor is to be assigned. Rather, it states, "A probation monitor may be designated to supervise the respondent's compliance with the conditions of probation." While the entity or person who may so designate under § 8.5 is not clear, it is not necessary or appropriate for the Court to determine who may designate a practice monitor under that section. The Court, instead, finds that in this case the Order of Enforcement, issued by the Tennessee Supreme Court ("the reviewing court") directed that the Board designate the practice monitor, and the Court has made its determination based upon the apparent failure to comply with this Enforcement Order.

**C.     The Defendants and Proposed Defendants Are Immune, Except as to Prospective Injunctive Relief**

The Eleventh Amendment to the United States Constitution immunizes an unconsenting state from suits brought in federal court by its own citizens as well as by citizens of another state. Benn v. First Judicial Dist. of Penn., 426 F.3d 233, 238 (3rd Cir. 2005); see also Reese v. State of Mich., 2000 WL 1647923, at *3 (6th Cir. Oct. 24, 2000)

This immunity is far reaching and bars all suits, whether for injunctive, declaratory or monetary relief against the state and its departments. Thiokol Corp. v. Dept. of Treasury, 987 F.2d 376, 381 (6th Cir. 1993). Eleventh Amendment immunity also bars suits in federal court against entities acting as arm of the state, see Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle,

18

429 U.S. 274, 280 (1977), including agents and instrumentalities of the state, see Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997), and state officials in their official capacities, see Graham v. Kentucky, 473 U.S. 159, 165-66 (1985).

A suit against a state official in his or her official capacity is not a suit against the official. It is, instead, a suit against the official's office, and therefore, a suit against a state official in his or her official capacity is no different from a suit against the State itself. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Neither a State nor its officials acting in their official capacities are persons under § 1983. Id. A state official, when sued for prospective injunctive relief in his or her official capacity, however, is a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Id., n. 10 (quoting Kentucky v. Graham, 473 U.S. at 167).

The Court of Appeals for the Sixth Circuit has recognized that absolute immunity applies to members and officials of Tennessee licensing boards and explained that "public policy requires absolute immunity for officials performing quasi-prosecutorial or quasi-judicial functions." Watts v. Burkhart, 978 F.2d 269, 274-75 (6th Cir. 1992). The Court of Appeals has further held that officials, including judges and state bar officials participating in state bar disciplinary proceedings, are absolutely immune from damage claims so long as they were acting within their jurisdiction. See Ginger v. Circuit Court for the County of Wayne, 372 F.2d 621, 624-25 (6th Cir. 1967) ("[I]t is clear that the [state bar and the grievance committee members] were acting within their statutory powers, and the proceedings were within their jurisdiction, wherefore, they are immune from liability for damages for any alleged violation of the Civil Rights Act.")

19

The Court finds that the Defendants and the "proposed defendants"[4] in this case were acting within their official capacities, and they are, therefore, immune from suit under § 1983, except as to prospective relief. For the reasons stated above, the undersigned finds that the only relief that is warranted in this case is prospective injunctive relief – specifically, enjoining Defendant Jones's selection of a practice monitor, her assignment of duties to the monitor, and her decisions regarding the terms and conditions of the probation, pending selection and assignment of a practice monitor by the Board consistent with the Order of Enforcement of the Supreme Court of Tennessee. The undersigned will recommend dismissing all claims against Defendant Jones, except for the injunctive relief discussed above, and will recommend dismissing all other claims and requests for relief made against all other Defendants and "proposed defendants."

### D.     *Younger* Does Not Require Abstention in this Case

The *Younger* abstention doctrine provides that a federal court should abstain from exercising its jurisdiction when three criteria are met, specifically: (1) the underlying proceedings constitute an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the course of the underlying proceeding. Younger v. Harris, 401 U.S. 37 (1971); Loch v. Watkins, 337 F.3d 574, 578 (6th Cir. 2003). For purposes of *Younger*, a state court action remains pending until a litigant has exhausted his state appellate remedies. Loch, 337 F.3d

---

[4] The proposed defendants are being referenced as such, based on their inclusion in the Plaintiff's Motions to Amend, although by virtue of the Court's Memorandum and Order granting those motions they could, arguably, be considered "Defendants" rather than "proposed defendants." In either event, these persons include: Members of the Board of Professional Responsibility (Lela Hollabaugh, Clarence Halmon, William Bovender, Michael Callaway, Wade Davies, Craig Fitzhugh, Kate Gooch, Michael King, Susan Emery McGannon, Rita Mitchell, Russ, Parkes, Eleanor Yoakum); Hearing Panel Officers (Timothy Houser, Weldon Patterson, Steve Erdely); the Justices of the Supreme Court of Tennessee (Chief Justice Cornelia Clark, Justice Janice Holder, Justice William Koch, Jr., Justice Sharon Lee, Justice Gary Wade); and Circuit Court Judge Walter C. Kurtz.

at 578 (citing <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 609 (1975)).

At the hearing in this matter, counsel for the Defendants conceded that there are no ongoing state judicial proceedings for purposes of applying the *Younger* doctrine. [Doc. 58 at 150]. Thus, an essential criterion for abstaining pursuant to *Younger* is not present, and the Court finds that *Younger* abstention is not appropriate in this case.

**E.    The Court Lacks Jurisdiction to Hear the Plaintiff's Petition for a Writ of Habeas Corpus**

Finally, the undersigned finds that this Court lacks jurisdiction to hear the Plaintiff's petition for a writ of habeas corpus, because he is not in custody. In his pleadings, the Plaintiff has alternatively petitioned for a writ of habeas corpus, <u>see</u>, <u>e.g.</u>, Doc. 6 at ¶ 4 ("In the alternative, for a writ of habeas corpus freeing Plaintiff from the restraints on his liberty to practice law pursuant to his license from the State of Tennessee taken from him pursuant to Tennessee's unconstitutional construction in *Cawood* of Rule 9, § 1.3 and T.C.A. § 27-9-101 et seq.").

A district court "shall entertain an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2245 (emphasis added); <u>see also</u> 28 U.S.C. § 2241(c)(3). The question of whether a petitioner is in custody is jurisdictional and must be addressed at the outset of any habeas corpus inquiry. Though the Supreme Court of the United States has recognized that a petitioner is not required to be in physical custody and may be, for example, on parole, the Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under *the conviction or sentence* under attack at the time his petition is filed." <u>Maleng v. Cook</u>, 490 U.S. 488, 490-91

(1989) (emphasis added).

The Plaintiff has not cited the Court to any cases that support his contention that his probation and suspension constitute being "in custody" for purposes of habeas corpus relief. The plain language of the federal habeas corpus statutes[5] argue against such an interpretation, and the Court's own inquiry has located only cases that hold that revocations of licenses do not constitute being "in custody" for purposes of habeas corpus review. See, e.g., Reiner v. Remington, 217 Fed. App'x 681, 682 (9th Cir. 2007) (rejecting petitioner's "contention that he remains in 'constructive custody' due to his disbarment and consequences thereof"); Williamson v. Gregoire, 151 F.3d 1180, 1183 (9th Cir. 1998) ("In general, courts hold that the imposition of a fine or the revocation of a license is merely a collateral consequence of conviction, and does not meet the 'in custody' requirement.")

The Court finds that the Plaintiff is not in custody for purposes of 28 U.S.C. §§ 2241, *et seq.* Therefore, this Court lacks jurisdiction over any habeas corpus claim by the Plaintiff. See

---

[5]Section 2241 directs:

(c) The writ of habeas corpus shall not extend to a prisoner unless--

(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

(5) It is necessary to bring him into court to testify or for trial.

28 U.S.C.A. § 2241.
Section 2245 similarly states, "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

22

<u>Hughes v. Birkett</u>, 173 Fed. App'x 448, 449 (6th Cir. 2006).

## IV.    CONCLUSION

Accordingly, the undersigned **RECOMMENDS**[6] that the Defendant's Motion to Dismiss **[Doc. 23]**, Plaintiff's Second and Supplemental Application for Temporary Injunction **[Doc. 33],** and Plaintiff's Supplemental Application for Temporary Injunction **[Doc. 41]** be **GRANTED IN PART and DENIED IN PART**, consistent with the findings above.

The undersigned **RECOMMENDS** that the Plaintiff be allowed to pursue prospective injunctive relief to enjoin Defendant Jones's selection of and her designation of the duties, terms, and conditions of operation of the practice monitor, until such time as the Board complies with the Order of Enforcement of the Supreme Court of Tennessee and assigns a practice monitor and designates the terms of the monitoring. The undersigned **RECOMMENDS** that all of the Plaintiff's other claims against Defendant Jones and any other Defendant (or "proposed defendant") be **DISMISSED,** for lack of jurisdiction, and that all other claims for injunctive relief be **DENIED**.

Respectfully Submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide <u>de novo</u> review where objections to this report and recommendation are frivolous, conclusive or general. <u>Mira v. Marshall</u>, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. <u>Smith v. Detroit Federation of Teachers</u>, 829 F.2d 1370 (6th Cir. 1987).